**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
~~LEXINGTON~~
Ashland

Eastern District of Kentucky
**FILED**

SEP 1 5 2022

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**                                   **INDICTMENT NO.** 0:22-CR-018 - DLB

**RICHARD R. REDNOUR, II**

\*   \*   \*   \*   \*

THE GRAND JURY CHARGES:

## BACKGROUND

### Relevant Entities

1.      At all relevant times, **RICHARD R. REDNOUR, II** was a resident of Morgan County, in the Eastern District of Kentucky.

2.      At all relevant times, **REDNOUR** held himself out to the public as a real estate agent, brokered real estate transactions, and performed other real estate management and maintenance services.  **REDNOUR** held ownership shares in and controlled various business entities, including Rednour and Associates, Inc., The Appalachian Group, Inc., and New Leaf Group, Inc.

3.      At all relevant times, Whitaker Bank was a financial institution insured by the Federal Deposit Insurance Corporation, with its main office in Fayette County, in the Eastern District of Kentucky.  **REDNOUR** maintained access to various financial accounts held at Whitaker Bank, including Whitaker Bank Account XX232, which was

held in the name of Rednour and Associates Escrow Account; Whitaker Bank Account XX056, which was held in the name of Rednour and Associates, Inc.; and Whitaker Bank Account XX451, which was held in the name of The Appalachian Group, Inc.

4.      At all relevant times, First National Bank of Grayson ("FNBG") was a financial institution insured by the Federal Deposit Insurance Corporation, with its main office in Carter County, in the Eastern District of Kentucky.

### **REDNOUR**'s Debts to Private Lenders

5.      On or about March 1, 2014, **REDNOUR** entered into a contract with G.B. and J.B., whereby **REDNOUR** agreed to purchase tracts of land identified as 63 acres located on a specified road in Morgan County, Kentucky, and 386 acres located at a specified address in Morgan County, Kentucky, for the sum of $1,000,000. As part of this contract, **REDNOUR** agreed to pay G.B. and J.B. $22,250 at the time of closing and the balance of $977,750 in monthly installment payments to begin several years after the execution of the contract. As part of this contract, **REDNOUR** also agreed to pay all taxes, assessments, and impositions levied or imposed upon the specified land. **REDNOUR** took possession of the specified land upon execution of this contract. At various points thereafter, **REDNOUR** incurred additional debt to G.B. based on G.B.'s payment of tax and utility bills payable by **REDNOUR**. On both December 17, 2018 and March 18, 2019, **REDNOUR** remained in possession of the specified land and owed G.B. and J.B. well over $900,000 under this contract.

6.      On or about June 27, 2017, **REDNOUR** agreed to the terms of a loan from K.H., whereby **REDNOUR** borrowed approximately $79,000 from K.H. and agreed to

repay that sum to K.H. over a 3-month period.  **REDNOUR** owed K.H. tens of thousands of dollars in loan principal on December 17, 2018 and on March 18, 2019.

7.       On or about April 27, 2018 and September 18, 2018, **REDNOUR** agreed to the terms of a loan from J.W., whereby **REDNOUR** borrowed an approximate total of $20,000 from J.W. and agreed to repay that sum to J.W.  **REDNOUR** owed J.W. thousands of dollars in loan principal on December 17, 2018 and on March 18, 2019.

8.       On or about January 24, 2019 and February 7, 2019, **REDNOUR** agreed to the terms of loans from S.A., whereby **REDNOUR** borrowed an approximate total of $37,000 from S.A. and agreed to repay that sum to S.A. **REDNOUR** owed S.A. thousands of dollars in loan principal on March 18, 2019.

9.       On or about March 14, 2019, **REDNOUR** agreed to the terms of a loan from T.H., whereby **REDNOUR** borrowed approximately $25,000 from T.H. and agreed to pay that sum to T.H.  **REDNOUR** owed T.H. thousands of dollars in loan principal on March 18, 2019.

<u>Escrow Account Deficiency</u>

10.      On or about October 29, 2018, **REDNOUR** accepted payments from R.C. for the purchase of a property in Stanton, Kentucky, which was scheduled to close in December 2018.  **REDNOUR** caused R.C.'s payments to be deposited into Whitaker Account XX232, to be held in escrow pending the transaction's closing.

11.      On various dates between October 29, 2018 and December 17, 2018, **REDNOUR** caused proceeds from R.C.'s payments to be transferred to other financial accounts maintained by **REDNOUR** and spent in various other transactions.  Many of

these transactions were unrelated to R.C.'s real estate transaction, and **REDNOUR** thus left Whitaker Account XX232 without sufficient escrow funds for R.C.'s real estate transaction.

Bank Loans Used to Repay Escrow Deficiency and Private Lender Debts

12.     On or about December 17, 2018, **REDNOUR** applied for and obtained a loan of approximately $120,000 from FNBG ("Loan XX549") in the name of **REDNOUR** and his spouse.  **REDNOUR** identified the purpose of the FNBG loan as the payment of credit card debt and operating expenses stemming from a contract between **REDNOUR**'s business and the Kentucky Housing Corporation.   In support of his loan application, **REDNOUR** submitted a personal financial statement that, among other things, claimed ownership of a farm located within the tracts of land identified in **REDNOUR**'s March 1, 2014 contract with G.B. and J.B.  **REDNOUR**'s personal financial statement underreported and omitted the hundreds of thousands of dollars owed by **REDNOUR** to G.B., J.B., K.H., J.W., and T.H., under the contracts and agreements identified in Paragraphs 5 through 9.

13.     On or about December 17, 2018, **REDNOUR** caused $120,000 to be deposited into Whitaker Account XX451.  The source of these funds was Loan XX549. .

14.     On or about December 18, 2018, **REDNOUR** caused $20,000 of the proceeds from Loan XX549 to be transferred from Whitaker Account XX451 to Whitaker Account XX232.  Following this transfer, **REDNOUR** caused the proceeds within Whitaker Account XX232 to be used for funding several payments related to R.C.'s real estate transaction.

15.     On or about January 2, 2019, **REDNOUR** caused $23,000 of the proceeds from Loan XX549 to be transferred from Whitaker Account XX451 to Whitaker Account XX232. Following this transfer, **REDNOUR** caused the proceeds within Whitaker Account XX232 to be used for funding a previously-dated payment to a mortgage holder associated with R.C.'s real estate transaction.

16.     On or about March 18, 2019, **REDNOUR** applied for and obtained a loan of approximately $49,000 from FNBG ("Loan XX993") in the name of New Leaf Group, Inc. **REDNOUR** identified the purpose of this loan as a cash out refinance for "operating capital". In support of his loan application, **REDNOUR** submitted a personal financial statement that, among other things, claimed ownership of a farm located within the tracts of land identified in **REDNOUR**'s March 1, 2014 contract with G.B. and J.B. **REDNOUR**'s personal financial statement underreported and omitted the hundreds of thousands of dollars owed by **REDNOUR** to G.B., J.B., K.H., J.W., S.A., and T.H., under the contracts and agreements identified in Paragraphs 5 through 9.

17.     On or about March 19, 2019, **REDNOUR** caused $49,000 to be deposited into Whitaker Account XX056. The source of these funds was Loan XX993.

18.     On or about March 19, 2019, **REDNOUR** caused $48,000 of the proceeds from Loan XX993 to be transferred from Whitaker Account XX056 to Whitaker Account XX232. Following this transfer, REDNOUR caused the proceeds within Whitaker Account XX232 to be used for funding a $25,000 payment to T.H.

## COUNTS 1-2
## 18 U.S.C. § 1344(2)

19.     Paragraphs 1 through 18 are re-alleged and incorporated by reference as if set forth fully herein.

20.     On or about December 17, 2018, and continuing through on or about March 18, 2019, in Carter County, in the Eastern District of Kentucky, and elsewhere,

### RICHARD R. REDNOUR, II

participated in a scheme and artifice to obtain moneys or funds under the custody or control of FNBG, a federally insured financial institution, by means of materially false and fraudulent pretenses, representations, and promises.  Specifically, on or about the dates listed below, **REDNOUR**, with the intent to defraud FNBG:

| Count | Date | Description of Conduct |
|---|---|---|
| 1 | December 17, 2018 | knowingly executed and attempted to execute the scheme by submitting to FNBG a loan application falsely stating the intended purpose of the loan sought and containing a personal financial statement that falsely and materially misrepresented his financial condition. |
| 2 | March 18, 2019 | knowingly executed and attempted to execute the scheme by submitting to FNBG a loan application containing a personal financial statement that falsely and materially misrepresented his financial condition. |

Each in violation of 18 U.S.C. § 1344(2).

## COUNT 3
## 18 U.S.C. § 1956(a)(1)(B)(i)

21.     Paragraphs 1 through 18 are re-alleged and incorporated by reference as if set forth fully herein.

22.     On or about December 18, 2018, in Fayette County, in the Eastern District

of Kentucky and elsewhere,

### RICHARD R. REDNOUR, II

knowingly conducted and attempted to conduct a financial transaction involving the proceeds of a violation of 18 U.S.C. § 1344, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said violation of 18 U.S.C. § 1344; to wit, a transfer of $20,000 from Whitaker Account XX451 to Whitaker Account XX232 designed to conceal Loan XX549 as the source of funds that replenished a shortfall in the funds escrowed for R.C.'s real estate transaction.

All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### COUNT 4
### 18 U.S.C. § 1956(a)(1)(B)(i)

23.     Paragraphs 1 through 18 are re-alleged and incorporated by reference as if set forth fully herein.

24.     On or about January 2, 2019, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### RICHARD R. REDNOUR, II

knowingly conducted and attempted to conduct a financial transaction involving the proceeds of a violation of 18 U.S.C. § 1344, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said violation of 18 U.S.C. § 1344; to wit, a transfer of $23,000 from Whitaker Bank Account XX451 to Whitaker Bank Account XX232 designed to

conceal Loan XX549 as the source of funds that replenished a shortfall in the funds

escrowed for R.C.'s real estate transaction.

All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## COUNT 5
## 18 U.S.C. § 1957

25.     Paragraphs 1 through 18 are re-alleged and incorporated by reference as if

set forth fully herein.

26.     On or about March 19, 2019, in Fayette County, in the Eastern District of

Kentucky, and elsewhere,

## RICHARD R. REDNOUR, II

knowingly engaged and attempted to engage in a monetary transaction in criminally

derived property of a value greater than $10,000; to wit, a transfer of $48,000 in proceeds

derived from a violation of 18 U.S.C. § 1344 from Whitaker Bank Account XX056 to

Whitaker Bank Account XX232.

All in violation of 18 U.S.C. § 1957.

## FORFEITURE ALLEGATIONS

### 18 U.S.C. § 982(a)(1)
### 18 U.S.C. § 982(a)(2)(A)

The allegations contained in Paragraphs 1-26 of this Indictment are re-alleged and

incorporated by reference as if set forth fully herein.

Upon conviction of the offenses charged in this Indictment, **RICHARD R.**

**REDNOUR, II** shall forfeit to the United States of America, pursuant to 18 U.S.C.

§§ 982(a)(1) and 982(a)(2)(a), any property, real or personal, involved in violations of 18

U.S.C. §§ 1956 or 1957 and any property traceable to such property; and any property

constituting or derived from proceeds obtained, directly or indirectly, as a result of

violations of 18 U.S.C. § 1344, including but not limited to the following:

### BANK ACCOUNTS:

Whitaker Bank Account XX232, held in the name of Rednour and Associates
Escrow Account;

Whitaker Bank Account XX056, held in the name of Rednour and Associates,
Inc.; and

Whitaker Bank Account XX451, which was held in the name of The Appalachian
Group, Inc.

### MONEY JUDGMENT:

A forfeiture money judgment in the amount of $169,357, which represents the
amount of proceeds that the Defendant obtained as a result of the violations
alleged in Counts 1-2 of this Indictment.

If any of the property described above, as a result of any act or omission

of the Defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided
       without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to 18 U.S.C. § 982(b)(1).

By virtue of the commission of the felony offenses charged in this Indictment, any

and all interest **RICHARD R. REDNOUR, II** has in the above-described property is

vested in the United States and hereby forfeited to the United States pursuant to 18

U.S.C. §§ 982(a)(1) and 982(a)(2)(A).

**A TRUE BILL**

**FOREPERSON**

**CARLTON S. SHIER, IV**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNTS 1-2:**   Imprisonment for not more than 30 years, a fine of not more than the greater of $1,000,000 or twice the gross gain or loss, and supervised release for not more than 5 years.

**COUNTS 3-4:**   Imprisonment for not more than 20 years, a fine of not more than the greater of $500,000 or twice the value of the property involved in the transaction, and supervised release for not more than 3 years.

**COUNT 5:**   Imprisonment for not more than 10 years, a fine of not more than the greater of $250,000 or twice the value of the property involved in the transaction, and supervised release for not more than 3 years.

**PLUS:**   Forfeiture of all listed property.

**PLUS:**   Mandatory special assessment of $100 per count.

**PLUS:**   Restitution, if applicable.